UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                                          )
                                                )
In re Lou Ann Lael,                             )          Case Number: 04-53075
                                                )
        Debtor.                                 )
                                                )
                                                )

**ORDER AND OPINION ALLOWING DEBTOR'S OBJECTION TO CLAIM**

This matter came before the court on August 2, 2005 upon the Debtor's Objection to the Amended Claim of James A. Davis.  Appearing before the court was R. Michael Wells, attorney for Lou Ann Lael ("the Debtor"), Vernon Cahoon, attorney for the Chapter 13 Trustee, and the claimant, James A. Davis ("Mr. Davis"). After consideration of the evidence, the arguments of counsel and other matters of record, the Court makes the following findings of fact and conclusions of law.

## BACKGROUND FACTS

Prior to filing her petition, the Debtor entered into an employment agreement dated November 18, 2002 (the "Agreement") to retain Mr. Davis in several domestic matters including legal separation, divorce from bed and board, child custody, child support, post separation support and alimony.  The Agreement provided for an initial retainer fee of $5,000.00, and further provided that:

> The amount of $2,500.00 of the initial retainer fee shall be a non-refundable prepayment for the Attorney's services, and is non-refundable by the Attorney to the Client.  Said initial prepayment for services affords the Client the right to be represented by the Attorney and the Client expressly understands that $2,500.00 of said initial retainer fee is not refundable.  The Client agrees that the balance of the initial retainer shall be used to pay the Attorney an hourly rate for all work done on the Client's case.

At the same time, the Debtor entered into a second employment agreement retaining Mr. Davis to pursue a claim for alienation of affection against Kelly Rhoades (the "Alienation of Affection Agreement"). In the Alienation of Affection Agreement, the Debtor agreed to pay Mr. Davis a contingency fee in the event of recovery and to reimburse Mr. Davis for all necessary expenses.

On January 23, 2003, about a year after entering into the agreements with Mr. Davis, the Debtor met with Alex Rhoades, the husband of Kelly Rhoades, at a local restaurant. Mr. Rhoades was separated from his wife at that point in time. The Debtor and Mr. Rhoades had numerous drinks together and eventually ended up together at the Debtor's home, where they both spent the night together. The Debtor called Mr. Davis the next morning and told him that Mr. Rhoades had stayed at her house over night, but that she had not engaged in sexual relations with Mr. Rhoades. Sometime within the next few weeks, Mr. Davis met with both Mr. Rhoades and the Debtor. Both Mr. Rhoades and the Debtor stated that they were extremely intoxicated on the evening of January 23rd and had difficulty remembering exactly what happened. They did recall that they continued to consume alcohol, watched some videos, and ate corn chips, but both reiterated that they did not recall engaging in sexual relations that night.

Approximately six months later, on June 18, 2003, Mr. Davis filed a complaint on behalf of the Debtor against Kelly Rhoades, alleging claims for alienation of affection and criminal conversation. Mrs. Rhoades filed an answer and counterclaim alleging that on or about January 23, 2003, the Debtor committed criminal conversation with Alex Rhoades. The parties participated in a court ordered mediated settlement conference. During this conference, the defendant, Kelly Rhoades, offered to settle all claims for $75,000.00, to be paid over a period of time. The Debtor was concerned about receiving payments over time, and Mr. Davis recommended that the Debtor reject the settlement offer, suggesting that a higher offer might be possible. As a result, the litigation continued, and in June of 2004, Mr. Davis conducted the

deposition of Mr. Rhoades. During the deposition, Mr. Rhoades testified that he and the Debtor had indeed had sexual relations on or about January 23, 2003.

In early July 2004, the litigation between the Debtor and her former husband reached its conclusion. On or about July 13, 2004, Mr. Davis sent a letter to the Debtor notifying her of an outstanding balance in the amount of $13,300.97 and requesting payment by August 1, 2004. On August 13, 2004, Mr. Davis filed a motion to withdraw as counsel for the Debtor in the alienation of affection and criminal conversation proceeding due to irreconcilable differences. Mr. Davis explained to this court that these irreconcilable differences were due to the Debtor's failure to pay the fees due and owing, and due to the fact that he "lost faith" in his client after Mr. Rhoades' deposition.

On September 30, 2004, Mr. Davis filed a civil action in Forsyth County District Court seeking payment of his attorney's fees. The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on October 21, 2004. Mr. Davis timely filed a proof of claim in the amount of $21,983.02, and on May 10, 2005, filed an amended claim (the "Claim") in the amount of $29,855.28 for attorney's fees allegedly owed for Mr. Davis' representation of the Debtor. At the hearing on this matter, Mr. Davis submitted a modified summary of his claim reflecting a balance due in the amount of $27,425.28. Despite the fact that Mr. Davis agreed to a contingency fee, the Claim includes charges for time spent on the alienation of affection claim. Mr. Davis takes the position that the Debtor breached the Alienation of Affection Agreement; and, therefore, he is entitled to attorney's fees at his hourly rate for his time spent on the alienation of affection claim.

The Debtor filed an Objection to the Claim asserting that (1) attorney's fees that concern an alienation of affection claim which was taken on a contingent fee basis should be subtracted from the Claim; (2) amounts for costs advanced by independent parties have been included in the

Debtor's Chapter 13 plan and should be subtracted from the Claim; (3) payments to Mr. Davis have not been properly credited to the Claim; and (4) the Claim should not include interest. Aside from these four issues, the Debtor does not dispute the amount or adequacy of the services provided by Mr. Davis.

## DISCUSSION

Pursuant to § 502 of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The evidentiary effect of a proof of claim is set forth in Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. Rule 3001(f) provides that a proof of claim that has been properly filed by the claimant is entitled to prima facie validity. The claimant is only entitled to have the claim considered "prima facie valid" if the claimant alleges facts sufficient to support the claim. In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3rd Cir. 1992) citing In re Holm, 931 F.2d 620, 623 (9th Cir. 1991). The burden of proof then falls upon the debtor to overcome the presumed validity and amount of the creditor's claim. Id. The Debtor is not required to disprove the claim. In re Kahn, 114 B.R. 40 (Bankr. S.D.N.Y. 1990). Once the debtor presents evidence to rebut the prima facie effect of the proof of claim, the ultimate burden falls upon the claimant to prove the validity and amount of its claim by a preponderance of the evidence. In re Allegheny Int'l, Inc., 954 F.2d at 174. As a preliminary matter, the court finds that in this case, the Debtor has presented sufficient evidence, such as the Alienation of Affection Agreement reflecting a contingency fee arrangement, as well as questions of law to rebut the prima facie effect of the Claim. Therefore, the court will proceed to examine the evidence and legal arguments presented to determine the amount and validity of the Claim.

In support of his proof of claim, Mr. Davis' submitted detailed time and billing records for the services he provided to the Debtor. Mr. Davis divided his work for the Debtor into nine

categories. Mr. Davis' billing records[1] reflect the following charges for each category of services:

| Matter No. | Description | Amount due |
|---|---|---|
| 1 | Custody | $12,704.00 |
| 2 | Equitable Distribution | $ 4,698.00 |
| 3 | Rhoades, K | $ 5,137.00 |
| 4 | Contempt | $ 5,343.50 |
| 5 | Support | $ 2,342.50 |
| 6 | Alimony | $ 9,012.50 |
| 7 | Tax | $ 190.00 |
| 8 | Fraudulent Conveyance | $ 360.00 |
| 9 | Divorce | $ 477.50 |
| **Total Requested Fees** | | **$40,265.00** |

While the Debtor does not dispute the total amount or adequacy of the services provided by Mr. Davis, the Debtor contends that, based on her own recollection, some services attributable to the alienation of affection claim were improperly categorized. The court finds that Mr. Davis' records, which were maintained contemporaneously with the services rendered, are more accurate and reliable than the Debtor's recollection.

Mr. Davis also submitted an itemization of costs he included in this Claim. Mr. Davis's summary of his proof of claim indicated that the Debtor owed $5,770.41 in costs associated with Mr. Davis's representation of the Debtor. However, when the costs that Mr. Davis billed to the Debtor and the costs contained on Mr. Davis's original billing records are totaled, the billing information shows that the amount of costs that Mr. Davis incurred in connection with his representation of the Debtor equals $5,435.71. Despite a thorough search of the record, the court

---

[1] These figures are taken directly from Mr. Davis' original billing records, not from the summary prepared by Mr. Davis, which contains several errors. For example, in the summary provided by Mr. Davis, one number is transposed from $1,612.50 to $1,162.50. As a result of this error Mr. Davis' total amount billed on the summary is $450.00 less than the amount reflected in his original billing records.

could not find records indicating costs of more than $5,435.71.  These costs can be divided into two categories.  The first category of costs are direct costs that Mr. Davis paid at the time that the cost was incurred.  This category includes items such as filing fees, postage, computer research, and copying fees.  The second category of costs are third-party costs.  These are costs such as private investigator fees and court reporter fees.  A summary of the costs indicating in Mr. Davis's billing records, which the court has categorized as direct or third party is as follows:

| Date | Description | Amount | Direct | Third-Party |
|---|---|---|---|---|
| 11/22/2002 | Filing Fee | $75.00 | X | |
| 01/23/2003 | Computer Research | $75.00 | X | |
| 02/20/2003 | Service of Subpoenas | $20.00 | X | |
| 04/30/2003 | Certified Mail | $8.84 | X | |
| 06/18/2003 | Filing Fee | $85.00 | X | |
| 08/15/2003 | Certified Mail | $4.42 | X | |
| 11/18/2003 | Titlesearcher.com | $4.00 | X | |
| 12/22/2003 | Service of Process | $15.00 | X | |
| 02/12/2004 | Service of Process | $5.00 | X | |
| 02/23/2004 | Computer Research | $6.00 | X | |
| 05/13/2004 | Service of Process | $10.00 | X | |
| 05/21/2004 | Fax Charges | $45.25 | X | |
| 06/10/2004 | Computer Research | $75.00 | X | |
| 06/30/2004 | Copying Charges | $25.50 | X | |
| 08/31/2004 | Private Investigator | $50.00 | | X |
| 08/31/2004 | Private Investigator | $230.00 | | X |
| 08/31/2004 | Professional Services | $130.00 | | X |
| 08/31/2004 | Mediation Fee | $281.25 | | X |
| 08/31/2004 | Bank Research | $104.00 | | X |
| 08/31/2004 | Bank Research | $157.65 | | X |

| | | | | |
|---|---|---|---|---|
| 08/31/2004 | Reporter Fee | $573.35 | | X |
| 08/31/2004 | Reporter Fee | $457.10 | | X |
| 08/31/2004 | Reporter Fee | $121.40 | | X |
| 09/02/2004 | Reporter Fee | $1,015.00 | | X |
| 09/02/2004 | Reporter Fee | $401.80 | | X |
| 09/02/2004 | Reporter Fee | $393.90 | | X |
| 09/02/2004 | Reporter Fee | $320.00 | | X |
| 09/02/2004 | Reporter Fee | $511.25 | | X |
| 09/02/2004 | Reporter Fee | $235.00 | | X |
| | **TOTALS** | $5,435.71 | $454.01 | $4,981.70 |

In summary, Mr. Davis has requested total attorney's fees in the amount $40,265.00 and total costs in the amount of $5,435.71.

**1. Attorney's fees for alienation of affection claim**

The first issue presented is whether Mr. Davis is entitled to attorney's fees which were incurred for services related to the alienation of affection claim. Mr. Davis contends that the Debtor breached the Alienation of Affection Agreement by failing to fulfill her duty of good faith and fair dealing. As a result of this breach, Mr. Davis contends that he is entitled to attorney's fees in the amount of $5,137.00[2] for his work on the Debtor's alienation of affection claim despite the fact that the Alienation of Affection Agreement provided for a contingency fee and the Debtor recovered nothing on this claim.

North Carolina courts of have recognized that "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right

---

[2] Time records were maintained by Mr. Davis for the alienation of affection claim and billed as matter number three entitled "Rhoades K", but, pursuant to the Alienation of Affection Agreement, were not billed to the Debtor.

of the other to receive the benefits of the agreement." <u>Governors Club, Inc. v. Governors Club Ltd. Partnership</u>, 152 N.C.App. 240, 251, 567 S.E.2d 781, 789 (2002) (citing <u>Bicycle Transit Authority v. Bell</u>, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)). While Mr. Davis concedes that North Carolina courts have not explicitly found that there is an implied covenant of good faith and fair dealing in a contract between an attorney and client, he contends that North Carolina law supports an extension of that concept into the attorney-client relationship. Furthermore, Mr. Davis contends that he is entitled to damages for this breach in the form of the value of his services determined at his hourly rate, despite the fact that the Debtor ultimately recovered nothing as a result of these services.

  An attorney who provides legal services pursuant to a contingency fee agreement and is then fired has a claim in *quantum merit* against the former client, but only upon the occurrence of the contingency. <u>Pritchett & Burch, PLLC v. Boyd</u>, 609 S.E.2d 439 (N.C.App. 2005). In <u>Pritchett & Burch</u>, a law firm sued a former client seeking attorney's fees for services provided pursuant to a contingency fee agreement. While the law firm was still employed as counsel, the former client had reached a settlement agreement whereby the former client was to receive $1,200,000.00, $300,000.00 of which was to be paid to the law firm for attorney's fees. The former client then backed out of the settlement and discharged law firm from further representation. The North Carolina Court of Appeals held that the law firm was not entitled to recover fees under quantum merit because there was no settlement or judgment in favor of the former client. <u>Id</u>. Mr. Davis contends that his Claim can be distinguished because he is not seeking his attorney's fees under a theory of quantum merit, but, rather, breach of contract.

  In this case, the court finds that if the Alienation of Affection Agreement did incorporate

an implied covenant of good faith, Mr. Davis has not presented sufficient evidence to support his claim that the Debtor breached such covenant. The Debtor has consistently maintained that she does not recall engaging in sexual relations with Mr. Rhoades on the night of January 23, 2003. While Mr. Davis concedes that the Debtor's recollection of that evening has never substantively changed, he contends that he lost faith in his client due to Mr. Rhoades' deposition testimony in 2004. To support his position that the Debtor was not acting in good faith, Mr. Davis subpoenaed Mr. Rhoades to testify at the hearing on this matter. Mr. Rhoades' testimony regarding the events on the night of January 23, 2003 was not clear. Mr. Rhoades testified that he did not initially remember what occurred on that night because he was extremely intoxicated.[3] He testified that his recollection is "very fuzzy" and that it was not until his deposition in June 2004 that he recalled that he had sexual relations with the Debtor. At the hearing, he could not state with certainty what had happened between himself and the Debtor.

What is clear to the court is that neither the Debtor nor Mr. Rhoades are able to clearly recall the events that transpired on that evening in January 2003, that the Debtor almost immediately told Mr. Davis about what she believed happened that evening, and that Mr. Davis chose to pursue the alienation of affection claim on behalf of the Debtor with the basic knowledge that the Debtor and Mr. Rhoades spent a night together, intoxicated, and alone in the Debtor's home. The court cannot find that the Debtor breached an implied covenant of good faith simply because Mr. Davis lost faith in her. Because the Debtor did not breach the Alienation of Affection Agreement, the court need not decide whether Mr. Davis would be

---

[3] To illustrate his impaired condition on the evening of January 23, 2003, Mr. Rhoades described how he ran over a mailbox with his vehicle and then went to the wrong house before he was finally able to reach the Debtor's home.

entitled to attorney's fees despite the fact that the Debtor received no settlement or judgement in her favor. Therefore, Mr. Davis is not entitled to recover damages in the amount of $5,137.00 and this amount must be deducted from his total requested fees.

**2. Costs**

The second issue presented is whether Mr. Davis is entitled to costs billed for services provided by third parties to the Debtor. At the hearing on this matter, Mr. Davis testified that he had not paid these third-party costs. The Debtor is proposing to pay these claims directly to the third parties through her Chapter 13 plan. Having not actually incurred the third party costs, Mr. Davis has no claim against the Debtor for them. However, if Mr. Davis pays any of these costs in the future, he has the right to amend his proof of claim with evidence of payment and to increase the amount of his claim in this case by the amount paid to the third-party provider. Given the evidence in the record and the testimony of Mr. Davis, the court finds that Mr. Davis has paid $454.01 in costs associated with his representation of the Debtor and his claim in this case shall include this amount.

**3. Payments**

The Debtor contends that Mr. Davis has not properly credited all payments to her account balance. In particular, the Debtor contends that the full amount of the initial $5,000.00 retainer should be credited to her account. The Agreement clearly provides that $2,500.00 of the retainer is nonrefundable and will not be used to pay Mr. Davis his hourly rate for services provided. Therefore, the Debtor is not entitled to deduct the full $5,000.00 from her account balance. Mr. Davis's record of the Debtor's payment history was admitted into evidence as Plaintiff's Exhibit 4. The record reflects that $2,500.00 of the retainer was used to make payments on the account balance. Copies of the checks were admitted into evidence as Debtor's Exhibit 1 and Plaintiff's

Exhibits 5 and 6 were consistent with Mr. Davis's records.  An itemization of payments made by the Debtor, not including the $2,500.00 nonrefundable retainer fee, is set forth on Exhibit A attached hereto.  According to this itemization, Mr. Davis received $24,682.54 to be applied toward the Debtor's account.

**4. Interest**

The Agreement provided that "upon the failure to render the amounts billed, a penalty of EIGHTEEN PERCENT (18% ) a.p.r., compound interest shall be assessed." Accordingly, Mr. Davis's Claim includes interest in the amount of $4,260.26 which was calculated from October 11, 2004 to the date of the filing of the Claim. The vast majority of the interest claimed by Mr. Davis accrued post-petition.  Mr. Davis is an unsecured creditor and he is not entitled to post-petition interest on this claim.  11U.S.C. § 502(b)(2); see also In re Cajun Elec. Power Co-op., Inc., 185 F.3d 446, 450 (5th Cir. 1999).  Therefore, Mr. Davis is only entitled to interest on the balance due on the Debtor's account from October 11, 2004 to the petition date, October 21, 2004, which, calculated at 18% is $53.75.

## CONCLUSION

Based upon the foregoing, the court finds that Mr. Davis is entitled a claim equal to the total allowable attorney's fees in the amount of $35,128.00 in addition to the total allowable costs in the amount of $454.01 as set forth on Exhibit A.  The Debtor is entitled to a credit for payments made toward the balance due in the amount of $24,682.54, also set forth on Exhibit A.  This leaves a remaining balance in the amount of $10,899.47 plus interest in the amount of $53.75.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED,** that the Debtor's Objection to the claim is allowed in part and that Mr. Davis is allowed an unsecured claim in the amount of $10,953.22.

**EXHIBIT A**

**Allowed Fees**
| | | |
|---|---:|---|
| Custody | $ 12,704.00 | |
| Equitable Distribution | $ 4,698.00 | |
| Contempt | $ 5,343.50 | |
| Support | $ 2,342.50 | |
| Alimony | $ 9,012.50 | |
| Tax | $ 190.00 | |
| Fraudulent Conveyance | $ 360.00 | |
| Divorce | $ 477.50 | |
| **Total Allowable Fees** | **$ 35,128.00** | |

**Allowed Costs**
| | | |
|---|---:|---|
| Filing Fee | $ 75.00 | Nov-02 |
| Computer Research | $ 75.00 | 1/23/2003 |
| Service of Subpoenas | $ 20.00 | 2/20/2003 |
| Certified Mail | $ 8.84 | 4/30/2003 |
| Filing Fee | $ 85.00 | 6/18/2003 |
| Certified Mail | $ 4.42 | 8/15/2003 |
| Titlesearcher.com | $ 4.00 | 11/18/2003 |
| Service of Process | $ 15.00 | 12/22/2003 |
| Service of Process | $ 5.00 | 2/12/2004 |
| Computer Research | $ 6.00 | 2/23/2004 |
| Service of Process | $ 10.00 | 5/13/2004 |
| Fax Charges | $ 45.25 | 5/21/2004 |
| Computer Research | $ 75.00 | 6/10/2004 |
| Copying Charges | $ 25.50 | 1/25/1900 |
| **Total Allowable Costs** | **$ 454.01** | |

**Total Allowable Fees & Costs** — **$ 35,582.01**

**Cash Received**
| | | |
|---|---:|---|
| 1/2 of Retainer Fee | $ 2,500.00 | 11/18/2002 |
| Deposit to Account | $ 100.00 | 12/13/2002 |
| Payment | $ 3,370.00 | 2/20/2003 |
| Deposit to Account | $ 1,630.00 | 2/20/2003 |
| Payment | $ 6,262.54 | 6/30/2003 |
| Payment | $ 200.00 | 11/14/2003 |
| Payment | $ 1,800.00 | 12/2/2003 |
| Payment | $ 620.00 | 1/14/2004 |
| Payment | $ 2,000.00 | 5/3/2004 |
| Payment | $ 900.00 | 6/10/2004 |
| Payment | $ 300.00 | 8/16/2004 |
| Payment | $ 5,000.00 | 10/11/2004 |
| **Payments Received through 10/11/2004** | **$ 24,682.54** | |

**Total Allowable Fees & Costs Less Payments Received** — **$ 10,899.47**
Interest($10,899.47*.18/365days*10days) — $ 53.75
**Total Due** — **$ 10,953.22**

Service List

Lou Ann Lael
541 Cherbourg Ave.
Winston-Salem, NC 27103

R. Michael Wells
155 Sunnynoll Court
Suite 200
Winston-Salem, NC 27106

James A. Davis
150 Stratford Road
Suite 322
Winston-Salem, NC 27104

Kathryn L. Bringle
Chapter 13 Trustee
P.O. Box 2115
Winston-Salem, NC 27102-2115